## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BRENT C. OXLEY, an individual, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. CV-20-2388 |
| PUNEET AGARWAL A/K/A PUNIT AGARWAL, an individual, | § § § | |
| Defendant. | § § § | |

## VERIFIED COMPLAINT

COMES NOW Plaintiff, Brent C. Oxley ("Oxley"), by and through his counsel, and for his causes of action against Defendant, Puneet Agarwal a/k/a Punit Agarwal ("Agarwal"), alleges and states as follows:

## PARTIES

1. Oxley is a citizen of Texas and operates his domain business in and around Harris County, Texas.

2. Agarwal is a citizen of India, residing in Dehli.

## JURISDICTION AND VENUE

3. Jurisdiction and venue are proper in this Court, pursuant to 28 U.S.C. § 1332. Oxley is a citizen of Texas. Agarwal is a citizen of India. Thus, complete diversity exists between the parties.

4. The amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest.

5. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because it is where a substantial part of the events giving rise to the claims occurred.

6. This Court may exercise personal jurisdiction over Agarwal because Agarwal has reached out to and purposely availed himself of the forum state by initiating, and continuously engaging in, contacts with Oxley, a citizen of the forum state, in an effort to, among other things, act as a broker in the purchase, registration, and sale of various domain names and has engaged in extortionist behavior against Oxley to achieve such goals.

## STATEMENT OF FACTS

7. Oxley is an established entrepreneur who gained notoriety for founding HostGator.com LLC ("HostGator"), a web hosting service, in 2002. Over the following years, Oxley grew and expanded both HostGator's business and physical presence. Since the sale of HostGator, Oxley has continued to operate in the web services field, including, but not limited to, the purchase and sale of domain names, which often total in excess of $10,000,000 annually.

8. Agarwal operates as a broker who arranges the purchase and sale of domain names in exchange for a commission.

9. In February 2018, Agarwal, aware of Oxley's identity through HostGator,

initiated contact with Oxley through an email offering to help Oxley in the sale of his premium domain names.

10. From April 2018 through August 2018, Agarwal assisted Oxley in the purchase of three domain names: Devote.com, Demolish.com, and Admirer.com. In connection with each purchase, the parties would negotiate a commission for Agarwal in the form of either a direct payment to Agarwal or a payment to GoDaddy.com, LLC ("GoDaddy"), the domain registrar used by the parties in this matter, for renewal fees for domain names owned by Agarwal personally. No written contract establishing an exclusive brokerage relationship was ever entered into between the parties.

11. Despite no further commissions being due and no contractual obligation requiring Oxley to do so, on or around August 26, 2018, Agarwal requested that Oxley assist him in renewing more domain names owned by Agarwal. In response, Oxley agreed to advance $5,000 to Agarwal for the requested renewals and asked for an accounting of all transactions between the parties as of that date. Agarwal responded that the commissions for the purchases of Devote.com, Demolish.com, and Admirer.com and the $5,000 advance constituted all of the transactions between the parties as of that date.

12. In October 2018, Oxley, in an attempt to help Agarwal garner some commissions, requested that Agarwal submit a bid on behalf of Oxley for the purchase of Memo.com, Flute.com, and Piano.com despite Memo.com and Piano.com having been previously offered for sale to Oxley not as a result of any efforts by Agarwal. However,

due to the high price that was received in response to Oxley's bid, Oxley and Agarwal agreed that, if Oxley purchased the domain names, the commission due on purchase (approximately $31,000) (the "Oxley Commission") would be paid to Oxley.

13. Nonetheless, seeking to build a side business venture with Agarwal, Oxley, upon purchasing Memo.com, Flute.com, and Piano.com, instructed Agarwal to take the Oxley Commission and use it to purchase premium Indian domain names, which would be subject to Oxley's pre-approval and held in Oxley's account with GoDaddy. Any proceeds from the sale of such domain names would then be split 50/50 between the parties.

14. Despite this understanding and Oxley's express instruction to Agarwal not to use the Oxley Commission for Agarwal's personal needs, Agarwal admitted to Oxley that Agarwal had spent the Oxley Commission on family debts, taxes, and personal excesses, including, but not limited to, drugs, alcohol, a luxury hotel, and the services of a prostitute. A true and correct copy of the Facebook Messenger chat transcripts containing such admission is attached hereto as Exhibit 1.

15. From December 2018 through February 2019, Agarwal, now out of money and desperate not to return to his home in Alwar, continued to contact Oxley, requesting a monthly salary for his living expenses in Delhi as well as renewal payments for his domain names in exchange for attempting to broker deals for the purchase and sale of Oxley's domains. Oxley refused.

16. Thereafter, beginning with messages sent to Oxley in late February 2019,

Agarwal's rhetoric escalated, blaming Oxley for failures to pay his rent and renew domain names, suggesting that all of his renewal fees could be paid if only Oxley would provide him with the CVV to Oxley's credit card which Agarwal had previously told Oxley that he had deleted from his account, and claiming that he would have to have his father sell his factory in order to pay Oxley back for the Oxley Commission.

17. In furtherance of this rhetoric, on July 9, 2019, Agarwal sent a series of messages via Facebook Messenger to Oxley, blaming Oxley for the loss of Agarwal's domain names due to Oxley's refusal to advance money to Agarwal not in connection with an earned commission. In the same series of messages, Agarwal also threatened to file a lawsuit against Oxley to "show [Oxley] how it feels when [his] domain will be in [his] account but [he] will not be the owner." A true and correct copy of this series of messages is attached hereto as Exhibit 2.

18. On or around September 13, 2019, Oxley became aware that Agarwal, without authorization, had charged Oxley's credit card for renewal of Agarwal's personal web domains in the amount of $30,000 and contacted GoDaddy who unwound the transaction.

19. As a result of Oxley's refusal to allow Agarwal to charge $30,000 to his credit card for renewal of Agarwal's personal domains and to advance money to Agarwal not in connection with an earned commission, Agarwal followed through on his threat from July 9, 2019 and filed suit against Oxley and an Indian affiliate of GoDaddy, GoDaddy

India Web Services, Pvt. Ltd. ("GoDaddy India"), in the Alwar District Court in India, Filing No. 858/2019, on November 15, 2019 (the "Indian Litigation"), alleging, without any evidence, that Oxley and Agarwal had entered into an exclusive brokerage agreement pursuant to which Agarwal was owed a commission upon Oxley's purchase and sale of any domain name and that GoDaddy India was liable for allowing these transactions to occur without Agarwal receiving his commission.

20. However, instead of attempting to obtain jurisdiction over Oxley in India and resolve any issues in court, Agarwal filed the Indian Litigation, naming GoDaddy India as a defendant, solely to induce GoDaddy to lock Oxley's registered domains, depriving Oxley of the ability to sell or renew any of those domains. A true and correct copy of emails dated April 1, 2020 from Agarwal to Oxley evidencing Agarwal's threat to employ a similar strategy in filing litigation against GoDaddy in order to lock domains owned by Oxley which are not included in the Indian Litigation is attached hereto as Exhibit 3.

21. In fact, Oxley did not become aware of the Indian Litigation until he contacted GoDaddy by e-mail after logging on to his GoDaddy account on January 9, 2020 to find several of his domains locked. A true and correct copy of this e-mail is attached hereto as Exhibit 4.

22. To this date, more than seven months after the filing of the Indian Litigation, Agarwal has never attempted service on Oxley. A true and correct copy of the case status for the Indian Litigation as of July 7, 2020 is attached hereto as Exhibit 5.

23. Despite no order or injunction ever being issued by the Court presiding over the Indian Litigation, as a direct result of its filing, GoDaddy, pursuant to Section 14 of the Universal Terms of Service Agreement between GoDaddy and Oxley[1], locked the following domain names owned by Oxley: Piano.com, Flute.com, Memo.com, Admirer.com, Darm.com, Devote.com, Demolish.com, Emir.com, Vtok.com, Vandalize.com, LoanTap.com, Advise.com, Message.com, Distribute.com, Detect.com, Jewel.com, Dust.com, Bonjour.com, Viaje.com, CIA.com, Drone.com, Item.com, Valentine.com, Bride.com, Hybrid.com, and Athlete.com (each an "Oxley Domain" and, collectively, the "Oxley Domains").

24. Since the filing of the Indian Litigation and the locking of the Oxley Domains, Oxley has received offers for the purchase of an Oxley Domain in excess of $5,000,000.00.

---

[1] Section 14 of the Universal Terms of Service Agreement between GoDaddy and Oxley (the "Contract") allows GoDaddy "to deny, cancel, terminate, suspend, lock, or modify access to (or control of) any Account or Services (including the right to cancel or transfer any domain name registration) for any reason (as determined by GoDaddy in its sole and absolute discretion), including, but not limited to the following: . . . (vii) to defend any legal action or threatened legal action without consideration for whether such legal action or threatened legal action is eventually determined to be with or without merit . . . ." UNIVERSAL TERMS OF SERVICE AGREEMENT, https://www.godaddy.com/legal/agreements/universal-terms-of-service-agreement (last visited June 9, 2020).

25. To this date, Agarwal has continued his efforts to extort Oxley for money[2], including but not limited to threatening to inform animal activists about allegedly unethical treatment of animals on Oxley's ranch located in Uvalde, Texas. A true and correct copy of the emails containing such threats is attached hereto as Exhibit 6.

26. Pursuant to Section 6 of the Uniform Domain Name Dispute Resolution Policy (the "UDRP") which is incorporated into the terms of the Contract, GoDaddy has not been named a defendant in this lawsuit but has been notified of this Complaint, having every intention to abide by the orders and judgment of this Court. *See* Internet Corp. for Assigned Names and Numbers, UDRP (Oct. 24, 1999), https://www.icann.org/resources/pages/policy-2012-02-25-en ("[GoDaddy] will not participate in any way in any dispute between [Oxley] and any party other than [GoDaddy] regarding the registration and use of [the Oxley Domains]. [Oxley] shall not name [GoDaddy] as a party or otherwise include [GoDaddy] in any such proceeding.").

## CAUSES OF ACTION

### COUNT I – TORTIOUS INTERFERENCE WITH CONTRACT

27. Oxley incorporates and re-alleges the allegations of Paragraphs 1 through 26

---

[2] Through his prior history before the Arbitration and Mediation Center of the World Intellectual Property Organization, Agarwal has gained a reputation for targeting notable individuals and organizations in an attempt to extort them. *See*, *e.g.*, Administrative Panel Decision, *Mr. Sidhartha Mallya v. Mr. Puneet Agarwal*, World Intellectual Property Organization Case No. D2014-1262 (October 20, 2014) and Administrative Panel Decision, *Facebook Inc. v. Puneet Agarwal*, World Intellectual Property Organization Case No. D2017-1491 (September 27, 2017).

as though fully set forth herein.

28. Oxley has a valid and enforceable Contract with GoDaddy which, among other things, allows Oxley to purchase, register, and sell certain domain names, including, but not limited to, the Oxley Domains.

29. At all relevant times, Agarwal was aware of the Contract and, at points, even acted as a broker to assist Oxley in the purchase and registration of domain names with GoDaddy for Oxley's account.

30. In order to extort Oxley, without any contractual basis whatsoever, Agarwal willfully and intentionally filed the Indian Litigation to induce GoDaddy to lock the Oxley Domains.

31. As a proximate result of the Indian Litigation, GoDaddy – per its rights under the terms of the Contract – has locked the Oxley Domains unless and until it receives a court order lifting the lock on the Oxley Domains.

32. As a result of the wrongful actions taken by Agarwal, Oxley has suffered damages, including, but not limited to, his ability to sell the Oxley Domains despite receipt of bona fide offers, and will continue to do so.

WHEREFORE, Oxley respectfully requests that this Court enter judgment in his favor and award him damages in excess of $5,000,000.00, including costs and attorney's fees, and any other relief this Court deems equitable and just.

## COUNT II – INJUNCTIVE RELIEF

33. Oxley incorporates and re-alleges the allegations of Paragraphs 1 through 32 as though fully set forth herein.

34. Oxley has a substantial likelihood of success on the merits given Agarwal's admissions prior to and after the filing of the Indian Litigation and failure/refusal to even attempt service on Oxley in the Indian Litigation for almost seven months.

35. If GoDaddy is not restrained from locking the Oxley Domains, Oxley will be irreparably harmed by not being able to sell the Oxley Domains despite bona fide offers for the same which will uniquely affect the value of the domains and thereby cause irreparable harm to the Oxley Domains.

36. The requested temporary restraining order and preliminary injunction will allow Oxley to protect the value of the Oxley Domains and market the same, which, due to their high value and unique nature, appeal to a limited number of purchasers during the pendency of this action.  Thus, the refusal of a bona fide offer for purchase of an Oxley Domain, which Oxley would otherwise accept, will result in damages in the millions of dollars.  Agarwal and GoDaddy will suffer no judicially cognizable harm by granting of the requested temporary restraining order or preliminary injunction allowing Oxley to sell the Oxley Domains as neither Agarwal nor GoDaddy has an existing lien upon or an ownership interest in the Oxley Domains.  Should Agarwal prevail against Oxley in any fashion, Agarwal's ability to recover money damages from Oxley will not be impaired.

37. It is in the interests of justice and public interest not to allow Agarwal to extort Oxley, a business owner and operator in this District, by filing litigation in a foreign country designed only to interfere with Oxley's contractual relationship with GoDaddy and with no intent to pursue its frivolous claims.

38. As Agarwal and GoDaddy will suffer no harm if GoDaddy is restrained or enjoined from locking the Oxley Domains, Oxley respectfully requests that the Court not require any security to support the requested injunctive relief.

39. Nonetheless, Oxley stands ready to post an adequate bond pursuant to Federal Rule of Civil Procedure 65(c), should the Court determine that such a bond is warranted.

WHEREFORE, Oxley respectfully requests, pursuant to Rule 65 of the Federal Rules of Civil Procedure, that the Court immediately issue a temporary restraining order instructing GoDaddy to unlock the Oxley Domains and provide transfer instructions regarding the same, set a hearing within fourteen (14) days of the issuance of a temporary restraining order to determine whether the temporary restraining order should be made into a preliminary injunction, and enter such other relief as the Court finds equitable and appropriate, including an award of reasonable attorney fees incurred by Oxley.

Respectfully submitted this 7th day of July, 2020.

> */s/ Daniel V. Carsey*
> Daniel V. Carsey, SBN 24050386
> SD No. 1691607
> Attorney-in-Charge
> Seth A. Day, Oklahoma Bar No. 20670*
> Jared R. Ford, SBN 24117695*
> **HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
> 100 North Broadway, Suite 2900
> Oklahoma City, OK 73102
> Telephone (405) 553-2313
> Facsimile (405) 553-2855
> Email dcarsey@hallestill.com
>             sday@hallestill.com
>             jford@hallestill.com
> *Pro Hac Vice* Application Forthcoming
>
> **ATTORNEYS FOR PLAINTIFF, BRENT C. OXLEY**

## VERIFICATION

STATE OF TEXAS        )
                      )   ss.
COUNTY OF UVALDE      )

I, Brent Oxley, the Plaintiff in this matter, after first being duly sworn, state that I am authorized to make this verification, and that the statements contained in the above Complaint are true and correct to the best of my knowledge and belief herein.

_____
BRENT OXLEY

Subscribed and sworn to before me this __7__ day of July, 2020.



_____
NOTARY PUBLIC

KATHY C. RICE
Notary Public, State of Texas
Comm. Expires 07-27-2022
Notary ID 131660610

My Commission Expires: ___7-27-22___